UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRAVIS STATEN and KEITH KIMBROUGH, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 3:16-cv-00771 ) JUDGE CRENSHAW ) |
| DICKSON, TENNESSEE, CITY OF, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Travis Staten and Keith Kimbrough bring this action, pursuant to 42 U.S.C. § 1983, alleging malicious prosecution against Officers Diane Moore, Michael Phillips, and Katrena Pulley, and municipal liability against the City of Dickson, Tennessee ("Dickson"). (Doc. No. 1.) Before the Court is a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), by Phillips, Pulley, and Dickson.[1] Because this motion is filed after Defendants answered the Complaint (Doc. No. 12), the Court construes this motion as a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Satkowiak v. Bay Cnty. Sheriff's Dept., 47 Fed. Appx. 376, 377 n.1 (6th Cir. 2002). For the following reasons, Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

I. ALLEGATIONS

Staten was a professional bail bondsman in Tennessee, authorized and approved to act as surety for criminal appearance bonds in Dickson County, Tennessee. (Doc. No. 1 at 3.) On October 11, 2014, Adam Marsh, a defendant in a criminal case in Dickson, Tennessee, contracted

---

[1] Moore did not join in the motion to dismiss.

with Staten to act as a surety on Marsh's bond. (Id.) In the bond agreement, Marsh gave Staten permission to come onto his property, "including permission to break and enter, if necessary to enforce the terms of the bond agreement." (Id. at 5.) Marsh did not pay the full fee that he agreed to pay to Staten. It is not clear from the Complaint, but at some point Marsh contacted the Dickson Police Department to complain that Staten was harassing him. (Id. at 4.) Marsh told Pulley, a Dickson police officer, that he had made his bond, appeared at all of his court appearances, and that there were no active warrants against him. (Id.) Pulley contacted Staten, who told Pulley that he was trying to collect a lawful debt pursuant to the bond agreement. (Id.) Pulley told Staten not to go onto Marsh's property without a warrant. (Id.) "Pulley's conduct and actions were approved by Defendant Michael Phillips." (Id. at 5.)

On November 22, 2014, Staten contracted with Kimbrough to arrest Marsh for failing to pay Staten for the bond agreement. (Id.) Before Kimbrough could do so, Michael Story, Marsh's neighbor, handcuffed Marsh and transported him in Story's vehicle to Staten. (Id. at 6.) Marsh asked Staten if he could pay thirty-five dollars on the balance of his bond so that he could avoid going to jail. (Id.) Staten agreed and Marsh was taken home. (Id.)

Story notified Pulley that he "didn't feel right" about what Staten and Kimbrough were doing to Marsh. (Id.) He told Pulley that Staten intended to surrender Marsh and "get off his bond" due to Marsh's failure to pay the balance of his bond fees. (Id.) Pulley instructed Story to bring Marsh and his wife, Kayla Marsh, to the police station to give a statement to Moore, a detective with the Dickson Police Department. (Id.)

Pulley told Moore that Staten was Marsh's professional bondsman and had acted as a surety on his criminal appearance bond. (Id.) Moore "was notified" that Marsh had not complied with the terms of his bond agreement; that Staten intended to surrender Marsh for failure to pay the balance

2

of his bond; and that Staten agreed not to surrender Marsh at that time if he would make a payment on the balance owed. (Id. at 7.) Moore swore an affidavit claiming that the "bond had not been legally revoked, the confinement of Adam Marsh was illegal." (Id.) She swore that Staten and Kimbrough "both used coercion to obtain funds that are a civil matter between [Staten] and [Marsh] from a bonding transaction." (Id.) "The actions and conduct of Defendants Pulley and Moore were approved by Defendant Phillips on behalf of the City of Dickson." (Id. at 8.)

Based on Moore's affidavit, Staten and Kimbrough were arrested and charged with extortion, a felony, under Tennessee Code Annotated Section 39-14-112. (Id.) Staten's appearance bond was set at one hundred thousand dollars, and Kimbrough's appearance bond was set at fifty thousand dollars. (Id.) On May 19, 2015, the charges against Staten and Kimbrough were dismissed at the preliminary hearing for lack of probable cause. (Id.)

Dickson was responsible for properly training Pulley, Moore, and Phillips in making reasonable arrests. (Doc. No. 1 at 10.) Dickson failed to provide that training. (Id.) Dickson further failed to instruct its officers that professional bondsmen are permitted to arrest criminal defendants without warrants regardless of whether a bond has been revoked. (Id.)

II. STANDARD OF REVIEW

The "standard of review for entry of judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Rule 12(b)(6)." Jackson v. Heh, 215 F.3d 1326, at *3 (6th Cir. 2000).

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

III. ANALYSIS

Defendants move to dismiss Pulley because she only referred the investigation to Moore, but did not take any part in Moore's decision to swear out an affidavit against Staten or Kimbrough. (Doc. No. 28 at 4.) Defendants move to dismiss Phillips because he did not take part in the prosecution of Staten or Kimbrough, but only approved the two prior police reports investigating Staten and Kimbrough. (Id. at 6.) Last, Defendants move to dismiss Dickson because the complaint did not specifically identify any policy, practice, and/or training that caused the malicious prosecution. (Id. at 7-8.)

To prove a claim of malicious prosecution under the Fourth Amendment, a plaintiff must prove four elements: (1) "a criminal prosecution was initiated against the plaintiff and [ ] the defendant made, influenced, or participated in the decision to prosecute;" (2) there "was a lack of probable cause for the criminal prosecution;" (3) "as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure;" and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010).

A. PULLEY

Based on the allegations in the Complaint, Pulley did not "influence or participate" in the decision to prosecute. "It is absolutely clear . . . that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." Id. at 314 (emphasis in original) (compiling cases). Here, the Complaint only alleges that Pulley gave truthful information to Moore, who then swore out the affidavit against Staten and Kimbrough. Staten and Kimbrough claim that, at a minimum, "Defendant Pulley failed to disclose material facts regarding the investigation, namely that Plaintiffs had a lawful purpose in their interactions with Marsh, thus making her less than a truthful participant." (Doc. No. 30 at 4.) Pulley told Moore that Staten was a licensed bail bondsman and that Marsh failed to pay his bond. This is accurate information, and the failure to offer his legal opinion on the legality of Marsh's actions is insufficient to prove the first element of malicious prosecution. The case against Pulley is dismissed.

B. PHILLIPS

The Court does not dismiss Plaintiffs' case against Phillips on the pleadings. Plaintiffs claim that Phillips supervised both Pulley and Moore and signed off on the investigation. (Doc. No. 30 at 5.) This allegation is apparently based upon the printing of Phillips's name on the bottom of Pulley's police investigation reports. (Docs. No. 31-1, 31-2.) Assuming that Phillips read and approved of both of Pulley's police investigation reports, Phillips would have been aware of and approved Moore's warrants, which were described in Pulley's second police investigation report. This is sufficient for Plaintiffs to "show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of Moore. Miller v. Davis, No. 15-3923,

2016 WL 3472004, at *8 (6th Cir. June 24, 2016) (quoting Phillips v. Roane Cnty., 534 F.3d 531, 543 (6th Cir. 2008)). At least at this stage, the Complaint sufficiently states a claim against Phillips.

C. DICKSON

The Court also declines to dismiss Plaintiffs' claim against Dickson.

A municipality cannot be held liable under § 1983 on the basis of respondeat superior. See Thomas v. City of Chattanooga, 398 F.3d 426, 432-+33 (6th Cir. 2005) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom. Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell, 436 U.S. at 693). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance of, or acquiescence in, federal rights violations. Burgess, 735 F.3d at 478.

Here, it is reasonable to infer from the Complaint that Dickson had such a policy or custom and that the Dickson police officers were not adequately trained regarding how to interact with professional bail bondsmen. Complaint Paragraph 5.54, 5.55, 5.58 and 5.62. Apparently all four defendant police officers in Dickson believed that Staten and Kimbrough were participating in extortion when they were, in fact, following Tennessee state law. The allegations that "upon information and belief" in the Complaint are barely sufficient to allege municipal liability against Dickson.

IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** with respect to Pulley, and **DENIED IN PART** with respect to Phillips and Dickson. Plaintiffs' case against Pulley is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

                                                                     _____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE