# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TRAVIS STATEN and KEITH KIMBROUGH, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) NO. 3:16-cv-00771 <br> ) CHIEF JUDGE CRENSHAW <br> ) |
| CITY OF DICKSON, TENNESSEE, et al., | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION

Travis Staten and Keith Kimbrough brought this action against the City of Dickson, Tennessee, Detective Diane Moore, and Sergeant Michael Phillips, asserting claims for malicious prosecution and municipal liability under 42 U.S.C. § 1983. (Doc. No. 40.) Before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 46.) For the following reasons, Defendants' Motion is **GRANTED**.

I. FACTS

On October 11, 2014, Adam Marsh contracted with Staten, a bail bondsman, to act as a surety on Marsh's criminal appearance bond. (Doc. No. 40 at 3; Doc. No. 54 at 2; Doc. No. 55 at 2.) Marsh agreed to pay Staten a bond premium of $100.00 plus $37.00 in fees for a total of $137.00. (Doc. No. 55-2 at 2.) Marsh paid a portion of the amount owed up front and agreed to pay Staten additional money each week. (Id.) Ultimately, Marsh fell behind on his payments. (Id.) On November 22, 2014, Kimbrough, who worked for Staten, and Michael Story, a bounty hunter who lived across the street from Marsh, went to Marsh's house, placed him in handcuffs, and transported him in Story's vehicle to Staten's workplace at McDonalds, which was in the opposite

direction as the jail. (Id. at 2-3; Doc. No. 51-1 at 2.) Marsh asked Kimbrough if Staten would agree not to surrender Marsh if he could pay some of the money owed to Staten. (Doc. No. 55-2 at 3.) Staten agreed, and Marsh paid Kimbrough $35.00. (Id.) Staten also stated that he hoped Marsh "took[ ] care of" the charges he filed against Staten after an incident the previous night.[1] (Doc. No. 51-1 at 2.)

After Kimbrough released Marsh, Story called the Dickson Police Department to report Staten and Kimbrough for arresting Marsh without a warrant. (Doc. No. 49-2 at 6-7.) Story told Officer Katrena Pulley that he initially believed they were going to take Marsh to the jail and turn him over to the Sheriff's Office, but instead went to the McDonald's. (Doc. No. 51-6.) Story "didn't feel right about what he witnessed," and "what just happened should not have happened," so he decided to notify the police department. (Id.) Pulley instructed Story to come to the police station and give a statement. (Id.) In his statement, Story told Pulley that Marsh owed Staten $50.00 on his bond, and that Marsh gave $35.00 to Kimbrough to give to Staten to avoid going to jail. (Id. at 7.) Pulley called Detective Moore to the police station to investigate the incident. (Id.)

Moore came to the police station and interviewed Story, Marsh, and Marsh's wife Kayla Marsh. (Doc. No. 51-1 at 2-3.) Moore averred that Marsh did not tell her that he owed money to Staten, but only that Marsh had not missed any court dates and did not have any outstanding warrants. (Id. at 3.) For the purposes of summary judgment, however, Marsh's affidavit establishes that he told Moore that he owed Staten the $35.00 as part of a bonding agreement. (Doc. No. 55-2 at 2-3.) Moore also checked for outstanding warrants against Marsh and found none, which indicated his bond had not been revoked. (Doc. No. 51-1 at 4.) As a result of Moore's investigation, she believed Staten hired Kimbrough to arrest Marsh for a revoked bond when his bond had not

---

[1] On November 21, 2014, Marsh complained that Staten was harassing him. (Doc. No. 49-2 at 1.) Charges were not brought against Staten based on the complaint of harassment. (Id.)

been revoked, and used extortion to obtain the $35.00. (Id. at 5.) Moore contacted District Attorney Ray Crouch, Jr., who, based on the facts Moore provided, recommended that Moore bring charges against Staten and Kimbrough for false imprisonment and extortion. (Id. at 5-6.) Moore then wrote and signed an Affidavit of Complaint, stating that the confinement of Marsh was "illegal," and that Staten and Kimbrough "used coercion to obtain funds that are a civil matter between [Staten] and [Marsh] from a bonding transaction." (Doc. No. 55-1 at 3.)

The Dickson Police Department then contacted Magistrate Mike Fizer to issue warrants for Staten and Kimbrough. (Id.) Fizer wrote for each defendant, "Based on the affidavit of complaint, I find that there is probable cause to believe that on the date set forth above in Dickson County, Tennessee, the defendant committed the offense of" extortion. (Doc. No. 51-3 at 1-2.) Fizer signed the "Probable Cause Determination" stating that an arrest warrant shall issue. (Id.)

On May 18 and 19, 2015, the Dickson County General Sessions Court held a preliminary hearing on the charges against Staten and Kimbrough. (Doc. No. 49-4 at 1.) At the preliminary hearing, Marsh, the only witness, testified that he owed Staten the $35.00 under the bonding agreement. (Id. at 2.) Based on that statement, Judge Holly dismissed the extortion charge for lack of probable cause. (Id.) However, Judge Holly found that probable cause existed on the false imprisonment charges against both defendants, and bound those charges over to the Grand Jury. (Id. at 4.) Moore did not testify before the Grand Jury, and the Grand Jury indicted both defendants for false imprisonment. (Id.; Doc. No. 55-1 at 5.) The State eventually dismissed the charges against both defendants. (Doc. No. 49-4 at 4-5.)

II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving

party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial' " Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however, will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

III.  ANALYSIS

Moore and Phillips move for summary judgment on the malicious prosecution claim. (Doc. No. 54 at 5-16.) In the alternative, they move for summary judgment based on qualified immunity. (Id. at 16.) Dickson also moves for summary judgment on the municipal liability claim. (Id. at 20.)

A. MALICIOUS PROSECUTION CLAIM AGAINST MOORE

Moore seeks dismissal because (1) Magistrate Fizer made an independent finding of probable cause on both the extortion and false imprisonment charges; (2) the General Sessions Court made a finding of probable cause for the charge of false imprisonment; (3) the Grand Jury made a finding of probable cause for the charge of false imprisonment; (4) intervening decisions

broke the chain of causation so that Staten and Kimbrough cannot recover from Moore; and (5) probable cause for the charge of false imprisonment against each defendant precludes the malicious prosecution claims based on the extortion. (Doc. No. 54.)

To prove a claim of malicious prosecution under the Fourth Amendment, a plaintiff must prove four elements: (1) "a criminal prosecution was initiated against the plaintiff and [ ] the defendant made, influenced, or participated in the decision to prosecute;" (2) there "was a lack of probable cause for the criminal prosecution;" (3) "as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure;" and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010). There is no dispute that Moore initiated the criminal prosecution against Staten and Kimbrough by signing the criminal affidavit, or that all criminal proceedings were resolved in favor of Staten and Kimbrough. The parties dispute the second and third elements.

*1. Probable Cause*

Moore argues that she is entitled to summary judgment on the malicious prosecution claims arising from the false imprisonment charges because the General Sessions Court and Grand Jury found probable cause for false imprisonment against both Plaintiffs, and those findings are binding on the Court. (Doc. No. 54 at 5-10.) Generally, "'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause' for a prosecution." Sanders v. Jones, 845 F.3d 721, 728 (6th Cir. 2017) (quoting Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002)). The determination of probable cause by a judge in a prior criminal hearing does not bar a § 1983 malicious prosecution claim when the defendant-officer "made materially false statements to the state judge that formed the basis of that court's probable

5

cause determination." Id. at 729 (quoting Darrah v. City of Oak Park, 255 F.3d 301, 311 (6th Cir. 2001)). To demonstrate a lack of probable cause in a malicious prosecution case when either a grand jury issued an indictment or a judge made a finding of probable cause, the plaintiff must establish "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." Id. (quoting Vakilian v. Shaw, 335 F.3d 509, 517 (6th Cir. 2003)).

Both the General Sessions Judge's and Grand Jury's probable cause determinations on the false imprisonment charges are binding on the Court. Plaintiffs did not file Moore's Affidavit of Complaint on the false imprisonment charge in the summary judgment record, so they did not make "a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth." Id. Further, Moore did not testify before the General Sessions Court or Grand Jury, and there is no evidence that the judge or the Grand Jury relied on Moore's Affidavit of Complaint or that any information contained therein was "material to the finding of probable cause." Id. Without this evidence, the Court is bound by the General Sessions Judge's and Grand Jury's separate determinations that probable cause existed for the false imprisonment charges. The Court therefore grants Moore summary judgment on the malicious prosecution claims as they relate to the false imprisonment charges.

2. *Deprivation of Liberty*

As to the malicious prosecution claims arising from the extortion charges, Moore argues that when an officer writes affidavits of complaint on multiple charges, some with probable cause and some without, the officer cannot be liable for malicious prosecution thereafter as long as the officer is not involved in the ongoing prosecution. (Doc. No. 54 at 10 (citing Wright v. City of

6

Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005)). Plaintiffs argue that each charge must be analyzed separately, and even if Moore did not maliciously prosecute one charge, she may have on the other charge. (Doc. No. 55 at 13.) The Sixth Circuit has not decided whether an officer who initiates the prosecution of multiple charges simultaneously can be liable for malicious prosecution on one or more, but not all, of the criminal charges.

"[A] police officer's probable cause as to one charge lodged against a plaintiff could not, by itself, defeat that plaintiff's claim for malicious prosecution as to the other charges for which probable cause was lacking." Freeman v. Troutt, No. 3:10-cv-0697, 2012 WL 5439160, at *10 (M.D. Tenn. Nov. 7, 2012) (Trauger, J.) (citing Holmes v. Village of Hoffman Estate, 511 F.3d 673, 682-83 (7th Cir. 2007)). "[P]robable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge." Holmes, 511 F.3d at 682 (agreeing with the 1st, 2nd, 3rd, and 11th Circuits).

Despite the Third Circuit's acknowledgement that probable cause on one charge does not defeat a malicious prosecution charge on different charges, Johnson v. Knorr, 477 F.3d 75, 83-85 (3d Cir. 2007), the Third Circuit inconsistently holds that sometimes it does. The court analyzes these cases under the "lack of probable cause" prong, holding that when an officer has probable cause to arrest the plaintiff and the officer is not further involved in the prosecution, a plaintiff cannot satisfy the probable cause element. Wright v. City of Philadelphia, 409 F.3d 595, 604 (3d Cir. 2005), endorsed by Kossler v. Crisanti, 564 F.3d 181, 194 n.8 (3d Cir. 2009) (en banc)). In Wright, the officer arrested the criminal defendant on multiple offenses, including burglary, theft, and criminal trespass. Id. at 598. The Third Circuit reversed the district court's conclusion that a lack of probable cause on the burglary required the malicious prosecution claim to move forward,

instead holding that the officer had probable cause on the criminal trespass charge and is therefore entitled to qualified immunity. Id. at 603-04.

The Third Circuit's approach appears to be at odds with the general consensus that probable cause on one crime does not foreclose a malicious prosecution claim for prosecuting a separate charge brought against the same criminal defendant. Holmes, 511 F.3d at 682. As such, the Court does not believe the Sixth Circuit would follow the Third Circuit's approach in Wright. The Court notes, however, that if it did follow Wright's approach, Plaintiff's malicious prosecution claim against Moore would be dismissed because Moore had probable cause to arrest Plaintiffs on the false imprisonment charges and she did not participate in the prosecution of Plaintiffs after their arrests.

Instead, the Court adopts the same approach used in this district and analyzes the test under the deprivation of liberty prong of the test. Freeman, 2012 WL 5439160, at *10. In Freeman, two officers attacked the plaintiff in jail and then someone charged him with aggravated assault. Id. at *3. These charges were dismissed at the preliminary hearing. Id. Judge Trauger, agreeing that probable cause on one charge does not defeat a malicious prosecution claim on another charge, found specifically that Holmes and the cases it agrees with do not "state that a person prosecuted as a result of the filing of [un]supported and baseless charges has, by virtue of that fact alone, suffered a deprivation of liberty sufficient to support a federal malicious prosecution claim. Id. at *10. Judge Trauger found that the defendant was already incarcerated, and he did not prove that the aggravated assault charge affected his liberty at all, thereby defeating the malicious prosecution claim. Id. at *10.

Here, because Moore had probable cause to arrest Plaintiffs on the false imprisonment charges, Plaintiffs must show that the prosecution of the extortion charges caused a loss of liberty

8

that they would not have suffered solely from the false imprisonment charges. They do not make this showing. For example, they do not provide proof that they remained in jail any longer, had additional conditions placed on their release from jail, were required to attend additional court dates, or any other facts that would show that they "suffered a deprivation of liberty" as a "consequence of the legal proceedings" on the extortion charge. Sykes, 625 F.3d at 308. Viewing the facts in the light most favorable to Staten and Kimbrough, they cannot prove the third element of the malicious prosecution claims. The Court grants summary judgment in favor of Moore.

B. MALICIOUS PROSECUTION AGAINST PHILLIPS

Phillips also moves for summary judgment on Plaintiffs' malicious prosecution claims. (Doc. No. 54 at 15-17.) Plaintiffs bring the malicious prosecution claims against Phillips as a supervisory official. (Id. at 15.) However, "a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor," McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 470 (6th Cir. 2006), because there must be "unconstitutional conduct of the offending officers," id. (quoting Hays v. Jefferson Cty., 668 F.2d 869, 874 (6th Cir. 1982)). Because the Court grants Moore summary judgment on Staten and Kimbrough's underlying Fourth Amendment claims, the Court also grants summary judgment to Phillips on the supervisory liability claims.

C. MUNICIPAL LIABILITY

Last, Dickson moves for summary judgment on Plaintiffs' municipal liability claim. (Doc. No. 54 at 20.) Plaintiffs argue that Dickson is liable for failure to supervise its officers. (Doc. No. 55 at 17.)

A municipality cannot be held liable under § 1983 on the basis of respondeat superior. See Thomas v. City of Chattanooga, 398 F.3d 426, 432-33 (6th Cir. 2005) (citing Monell v. Dep't of

9

Social Servs., 436 U.S. 658, 694 (1978)). Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom. Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell, 436 U.S. at 693). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance of, or acquiescence in, federal rights violations. Id.

As Plaintiffs acknowledge, to be liable on the inadequate training or supervision claim, Plaintiffs must prove that the municipality had "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury," or at least a "pattern of inadequately investigating similar claims." Id. (quoting Miller v. Sanilac Cty., 606 F.3d 240, 255 (6th Cir. 2010)). Plaintiffs do not even attempt to make this showing. As such, Dickson is entitled to summary judgment on the municipal liability claim.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 46) is **GRANTED**.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE